47 N.J. Super. 125 (1957)
135 A.2d 539
DENNIS BARBARISI, AN INFANT BY HIS GUARDIAN AD LITEM, GILDA BARBARISI, AND GILDA BARBARISI AND ANTHONY BARBARISI, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
MARY CARUSO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1957.
Decided October 22, 1957.
*127 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Joseph M. Rotolo argued the cause for plaintiffs-appellants (Messrs. Rotolo & Rotolo, attorneys; Mr. Joseph M. Rotolo, of counsel).
Mr. William V. Breslin argued the cause for defendant-respondent (Mr. Breslin, attorney and of counsel; Mr. William J. Scanlon, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
This action was instituted on behalf of Dennis Barbarisi, an infant now 9 years of age, by his mother as guardian ad litem, and by the infant's parents per quod, to recover for personal injuries, medical expenses and loss of future earnings. The complaint is based on failure to exercise reasonable care in the assumed duty to care for and supervise the infant plaintiff. At the conclusion *128 of the plaintiffs' testimony, before a jury, on the question of liability, the defendant's motion for an involuntary dismissal was granted. Hence, the plaintiffs appeal.
Dennis Barbarisi, on January 17, 1956, when seven years of age, was living with his parents and a younger sister on the second floor of a two-family house. The defendant, who is his maternal grandmother, is the owner of the premises and occupies the first floor. Dennis was in the second grade at school and had come home at noon for the rest of the day. His mother had taken the two children to her mother, the defendant, who was in the basement doing her laundry. The plaintiff testified that she asked the defendant to watch the children while she went shopping for herself, and inquired if she needed anything from the store. The defendant said she would watch the children. The infant's mother testified that she and her mother each do their own laundry. At the time of the incident, defendant was engaged in doing her own laundry in an agitator type electric machine which opened at the top.
Dennis testified that his mother had taken his sister and him to the cellar where his grandmother, the defendant, was doing her laundry and hanging up some clothes she had already washed. He testified that his mother asked his grandmother if she would care for the two children while she went to the store to do some shopping. Dennis further testified that when his mother left to go to the store, she left him and his sister with the defendant in the cellar, where they remained until the defendant heard somebody at the door and she went upstairs. At this time the laundry machine was in operation, with the top open, and Dennis "heard the washing machine was making a funny sound." He testified that he went upstairs and told his grandmother that "the machine was making a funny sound" and she said that it always makes that noise, and she did not go downstairs again. Dennis returned to the cellar and knelt on a chair to watch the washing machine in operation. He testified that "when my arm was on the side, my sleeve got caught and I pulled it out and I ran *129 upstairs and I told my grandmother that I think my arm was broken." The police and a doctor were called and Dennis was taken to the hospital where he stayed for 10 days, and where he had X-ray pictures taken of his arm which was put in a cast. He testified that his arm was broken above the wrist and above the elbow.
In the pretrial order the defendant admitted that Dennis was left in her care and that the washing machine was in operation at the time of the accident.
At the conclusion of the plaintiffs' case, the defendant's motion for an involuntary dismissal was granted. During the colloquy the trial judge said "at best the two Barbarisi children were social guests of the grandmother, were they not? * * * The owner of the property owed them no duty, or put it this way, they took the premises as they found them." The trial judge also stated that there was no evidence of negligence by the defendant.
The appeal is based on plaintiffs' two-fold contention that defendant was guilty of negligence in having assumed the care and supervision of Dennis and having failed to exercise the care required under the circumstances, and that the evidence on the question of liability presented a question of fact for the jury to determine.
The first question to be determined is whether or not the trial court erred in determining that there was no question for the jury. It may seem a threshing out of old straw to state again that it has been the practice on a motion for a judgment of involuntary dismissal that the court shall accept as true the plaintiff's evidence and every legitimate inference of fact that can be drawn therefrom which is favorable to the plaintiff, nor can the trial court weigh the evidence. Miller v. Public Service Co-ordinated Transport., 111 N.J.L. 339 (E. & A. 1933); Callahan v. National Lead Co., 4 N.J. 150, 155 (1950); Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955).
The trial court accepted the view of the defendant that there was no proof of negligence and that the infant was a social guest. The trial court determined that defendant *130 owed the infant no affirmative duty, and he took the premises as he found them. In our view, the infant plaintiff was not in the ordinary sense a social visitor of the defendant. The pretrial order and the testimony clearly show that the defendant voluntarily assumed a duty which she was under no legal obligation to assume. It is well settled principle of law that "a volunteer must act with due care." Freddi-Gail, Inc., v. Royal Holding Corp., 45 N.J. Super. 471, 474 (App. Div. 1957); Mistretta v. Alessi, 45 N.J. Super. 176 (App. Div. 1957). Where one undertakes to do an act for another without compensation, the other relying thereon, he is responsible for the exercise of reasonable care in so doing when he assumes and attempts to perform a duty in which he fails. La Brasca v. Hinchman, 81 N.J.L. 367 (Sup. Ct. 1911); Thorne v. Deas, 4 Johns 84 (N.Y. 1809); Restatement of the Law of Torts, Negligence, § 324, p. 876.
Taking the plaintiffs' evidence as true, together with the favorable inferences, can it be said that the defendant exercised that degree of due care which a reasonably prudent person would exercise under the circumstances here present? The law, as well as adults, makes allowances for the impulsiveness and lack of maturity and experience of children. Danbeck v. New Jersey Traction Co., 57 N.J.L. 463 (Sup. Ct. 1895); Hoff v. Natural Refining Products Co., 38 N.J. Super. 222, at pages 232, 233 (App. Div. 1955). The testimony discloses that Dennis, seven years of age, being curious and interested, and being left without supervision, heard an unusual "funny sound" while an electric washing machine was in operation with its top open, went upstairs, told the defendant of what he heard, and then went down to the cellar where his grandmother had left him before she went upstairs to answer the door. The defendant might well have expected that Dennis would be unable to resist the temptation to see what was causing the "funny sound" inside the washing machine. The defendant had notice, she was made aware of his curiosity and interest in the machine. It is not necessary that the defendant should have anticipated the very occurrence which resulted in his *131 injury, it is sufficient that the defendant should have foreseen the general risk involved. Bacak v. Hogya, 4 N.J. 417, 424 (1950); 2 Harper and James, Law of Torts, § 20.5, pp. 1134, 1149.
There was evidence, as well as the inferences to be drawn therefrom, from which the jury could find that Dennis was left with his grandmother under an arrangement with his mother by which the defendant would watch for the safekeeping of the plaintiff and his sister while his mother was shopping for herself and for the defendant. The jury could have found under the circumstances here present, with proper instructions, that the defendant assumed to act as custodian and caretaker of the children during the time the mother was shopping, and had failed to discharge that undertaking with due care. Mistretta v. Alessi, supra (45 N.J. Super. 176).
Assuming, without conceding, that the infant was a social guest, nevertheless the operation of the washing machine, as a potentially harmful instrumentality, was an activity of the defendant rather than a condition of the real estate or pertaining to its maintenance. See Cropanese v. Martinez, 35 N.J. Super. 118 (App. Div. 1955); Mistretta v. Alessi, supra, 45 N.J. Super. 176, at pages 180, 181. If plaintiff were a mere licensee, there would still be the duty on defendant's part to refrain from active wrongdoing resulting in his bodily harm. Ibid. Mistretta v. Alessi, supra. The operation of the washing machine, under the circumstances, might well be so regarded, but we need not decide the point in view of our conclusion in terms of default in the duty of reasonable care to watch and supervise the child.
It was for the jury to decide whether the defendant exercised due care in the performance of her assumed responsibility.
Reversed and a trial de novo is granted.