ALMON, Justice.
The plaintiff, Ed Massey, individually and “d/b/a Home Decor, Inc.,”[1] appeals from a summary judgment in his negligence action against Mohammed Khansari Atigh, Inc., d/b/a IHOP #431.[2] Massey alleges in his complaint that the building in which IHOP # 431 conducted its restaurant business was negligently maintained, that as a result of this negligence a fire occurred in that building, and that the fire and the efforts to extinguish it resulted in smoke, debris, and water being deposited onto Massey’s adjacent property, damaging it. The issue is whether the circuit court erred in holding that Massey failed to present substantial evidence to support his claim.
On or about December 1, 1992, Home Decor, Inc., leased a parcel of land on Airport Boulevard in Mobile for use as a Christmas tree lot. This lot was adjacent to the premises of IHOP # 431. Sometime between 2:00 and 3:00 o’clock on the morning of December 13, 1992, a fire started in the attic of the IHOP #431 building. The fire burned a hole in the roof of the building, from which smoke and debris escaped. The smoke and debris, along with water used to extinguish the fire, were deposited onto the plaintiffs property. Massey claims that the debris from the fire destroyed all of the Christmas trees on the lot.
*876 The cause of the fire was never determined, but the record contains evidence indicating that on the day before the fire Mr. Atigh was having some electrical repairs made on the building. Atigh testified in his deposition that on the day before the fire he had had a dishwasher installed and had done some work on a small neon sign on the chimney of the building. While the evidence indicates that the fire started in the attic of the IHOP building, there was no evidence that the fire started in the immediate area where the work had been done or that the fire was caused by the work. Likewise, there was no evidence that the fire was intentionally set. Atigh testified that the fire inspector never told him the cause of the fire.
Massey bases his entire action upon two speculative allegations. As to the first allegation, Massey claims in his answers to the defendant’s interrogatories that Atigh told Massey on the morning of the fire that Atigh had had electricians doing work on the building when the fire broke out. However, Massey later testified at his own deposition that Atigh did not say that this work caused the fire or that the electricians were present when the fire started, but, instead, that Atigh had merely stated that he had had some work done in the area of the fire. Second, Massey claims that Atigh negligently maintained the IHOP building and that the fire occurred as the result of Atigh’s negligent maintenance. Massey also supported this allegation with his interrogatory answer. He specifically stated in his interrogatory answer:
“To my knowledge the defendants did nothing to maintain the premises for quite some time and finally due to the deplorable conditions on the premises apparently were having some repairs done when those repairs resulted in the fire on the premises which caused damage to my business and property.”
However, once again Massey contradicted himself in his own deposition answers:
“[Plaintiffs attorney:] You just tell him what you base the facts you know about it [sic],
“A. Prior to the fire, I had been in IHOP to eat two or three different times, and the bathrooms were filthy. The place just looked like a garbage dump. I mean, just — if you want to and so I guess that [is] what I based it on.
“Q. [Defendant’s attorney:] Okay. So when you said in your answers to interrogatories, ‘premises had not been maintained for quite some time,’ the only thing you had to base that on is that you ate there several times prior to the fire, and it was unclean somehow?
“A. Yeah. It just didn’t look — I mean, you’ve been in a beautiful, nice, clean restaurant, and then you’ve been in a greasy spoon, haven’t you? That was a greasy spoon prior to the fire and now it is one of the nicest places in Mobile.
“Q. So basically it was dingy and dirty?
“A. Yeah. That’s probably — I mean, I wasn’t saying that he didn’t have someone to come in and check his wiring or anything like that. What I was saying is the place just looked like — it just didn’t look like a real nice place to go in and eat.
“Q. Okay. And none of that, though, had anything to do with this fire, did it?
“A. Oh, no, I wouldn’t think so.”
The plaintiff continued to give answers in his deposition that revealed that he had no evidence that the defendant had negligently caused the fire:
“Q. Okay. But the repairs he said he was having made didn’t have anything to do directly with the deplorable conditions that you observed?
“A. No, huh-uh, no.
“Q. What do you know yourself or what have you ever learned about what Mr. Atigh did or didn’t do that caused this fire?
“A. I have no idea. I still — I don’t know what caused the fire. All I know is that he told me he was having some work done on his building, and that night that he was having the work done on the building is the night it caught on fire.
“Q. Okay. So as far as you know, this fire was totally separate and apart from whatever repairs he was having done?
“A. Right.”
*877 The Court addressed this kind of proximate cause issue in the strikingly similar case of Hollis v. Brock, 547 So.2d 872 (Ala.1989). In Hollis v. Brock the plaintiffs alleged that the defendants had negligently maintained the wiring in their building and that as a result of negligence a fire broke out and spread to the plaintiffs’ building. The plaintiffs produced no direct evidence that the defendants were in fact negligent in maintaining the wiring and, instead, relied upon the simple allegation that the defendants had “negligently maintained the wiring.” The circuit court entered a summary judgment for the defendants, and this Court affirmed the judgment. This Court specifically stated:
“[N]o evidence of the fire’s origin was produced; there was nothing to show that it was caused by the wiring or any other possible defect in the building.... All that the Hollises produced against the Ed-wardses were the Hollises’ own depositions, wherein they claimed that the wiring was faulty and was the cause of the fire, even though they were not experts and they had never even been in the Edwards-es’ building. Such speculation or conjecture is wholly insufficient to warrant submission of the case to a jury.”
547 So.2d at 873.
The facts in this case are sufficiently similar to those in Hollis to justify an affir-mance under the holding of Hollis v. Brock. Massey, like the plaintiffs in Hollis, presented no evidence regarding the origin of the fire. Instead, he relies solely upon his own answers to the interrogatories propounded by IHOP # 431. He later contradicts those answers in his own sworn deposition testimony. Furthermore, Massey admits in his deposition that he does not know what caused the fire and knows nothing that Atigh might have done that caused the fire.
As a point of comparison, it is helpful to review Bell v. Colony Apartments Co., 568 So.2d 805 (Ala.1990). In Bell the plaintiffs, tenants of the defendant’s apartment complex, brought a negligence action based on damage caused by a fire that broke out in a crawlspaee between the plaintiffs’ apartments. Unlike the plaintiffs in Hollis and the plaintiff in the present case, the plaintiffs in Bell presented evidence regarding the cause of the fire. The Bell plaintiffs produced evidence that the defendant had had workers make electrical repairs on the heating unit in the crawlspaee just 30 minutes before the fire broke out. Bell, 568 So.2d at 806. Furthermore, they presented evidence regarding the questionable methods used by the workers and expert testimony indicating that the fire was electrical in nature and could have been caused by the repairs. Bell, 568 So.2d at 807-09. Based on that evidence, the Court reversed the defendant’s summary judgment.
Massey has argued in his brief that Bell stands for the proposition that direct evidence of a fire’s origin is not required; rather, he says Bell suggests that negligence may be proven by circumstantial evidence. While Massey correctly asserts that negligence can be proven by circumstantial evidence, he has simply presented no circumstantial evidence regarding the origin of the fire. In fact, the Court addressed this very situation in Bell:
“As a general rule, ‘summary judgment is rarely appropriate in negligence actions, which almost always present factual issues of causation and of the standard of care that should have been exercised. Tolbert v. Gulsby, 333 So.2d 129 (Ala.1976).’ Yarborough v. Springhill Memorial Hospital, 545 So.2d 32, 34 (Ala.1989). Of course, if there had been no evidence presented concerning the origin of the fire, the probable cause of the fire, and the other circumstances surrounding the fire, then summary judgment might have been appropriate.”
Bell, 568 So.2d at 809. It is clear that no evidence such as that mentioned in the last sentence of this quotation from Bell has been presented by the plaintiff in this case. Like the plaintiffs in Hollis, the plaintiff here has failed to present sufficient evidence in support of the claim. Therefore, the summary judgment is due to be affirmed.
AFFIRMED.
*878 HORNSBY, C.J., and MADDOX, HOUSTON, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.

. Massey is the vice president of Home Decor, Inc. No issue is raised as to whether Massey has standing to bring this suit either in his individual capacity or in the name of the corporation.

. Mohammed Khansari Atigh, Inc. ("Atigh, Inc.”), operates a franchise, known as "IHOP #431," of the International House of Pancakes Corporation. Mr. M.K. Atigh is the principal owner and operator of Atigh, Inc.